UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case. No. 17-CR-129 (RDM) |
| MARIO TAYLOR, | ) ) | |
| Defendant. | ) ) ) | |

## MOTION TO DISMISS FOR FAILURE TO PRESERVE EVIDENCE

Mario Taylor, by and through counsel, respectfully moves this Honorable Court pursuant to Rule 16 of the Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment to the United States Constitution, to dismiss the Retyped Indictment in this matter. *See* ECF No. 79. Despite claiming that the rifle was found inside a green lawn chair bag, inside a closet filled with clothing and other belongings, inside a cluttered apartment that appeared to be inhabited by multiple individuals, the government did not preserve *any* tangible evidence in this case other than the alleged contraband. At the *very least*, the government should have properly photographed and preserved the containers in which the alleged contraband was found—such as the shoeboxes and green lawn chair bag, in addition to the belongings and other items found around and near the alleged contraband. Because these items should have been preserved under Rule 16 and the Due Process Clause, the government's failure to preserve any tangible evidence from the apartment violated Mr. Taylor's constitutional and statutory rights, and this case must be dismissed. Mr. Taylor respectfully requests an evidentiary hearing on this motion prior to trial.

1

**Background**

Testimony of the government witnesses at previous hearings on this matter establishes the following.  On June 1, 2017, Deputy United States Marshal Mark Beard and two other deputies of the United States Marshal Service went to 2547 Elvans Road, Southeast, Apartment 102 to conduct an eviction.  *See generally*, Tr. of Motion Hearing Before the Hon. Randolph D. Moss, United States District Judge (Oct. 27, 2017) [hereinafter Oct. 27 Tr.].  According to Deputy Beard, there were four adults—including Mr. Taylor—and an infant inside the apartment when the Marshals arrived.  *Id.* at 41:25-42:6.  After the apartment was cleared, the Marshals took control of the property and instructed 20 members of the eviction crew to enter the apartment and start moving the items outside onto the sidewalk.  *Id.* at 39:7-41:15.  As part of the Marshals' standard procedure, the eviction crew was instructed to open all boxes and closed containers found inside the residence to avoid putting hazardous items onto the sidewalk.[1]  Any items that the eviction crew did not put on the sidewalk were left inside the apartment for the landlord to dispose of.  *Id.* at 88:18-20.  The landlord would ask the eviction crew to take any items left in the apartment and put them in a dumpster.  *Id.* at 88:18-89:1.

About 45 minutes to one hour into the eviction, the Marshals recovered two rifle magazines under the dining room table.  *Id.* at 64:4-9.  Five minutes later, one of the crew members opened a shoebox in the back bedroom and saw two handguns inside.  *Id.* at 64-66.  Deputy Beard took the box from that bedroom and brought it to the dining room, which is in the front of the apartment.

---

[1] *See* Oct. 27 Tr. at 45:10-24.  The Marshals instruct the crew that items such as tools and cleaning supplies should stay inside the apartment, for the landlord to dispose of.  *Id.* at 49:25-50:6.  The Marshals also instruct the eviction crew to open all shoeboxes and place the shoes in the bags for "space reasons" and also to make sure there is no contraband inside.  *Id.* at 69:12-70:9.  To avoid running out of bags for the eviction, the shoes would be put on the sidewalk in a bag and the shoeboxes would stay inside the residence.  *Id.* at 70:2-15.

*See* Tr. of Motion Hearing (Continued) Before the Hon. Randolph D. Moss, United States District Judge (Nov. 17, 2017) [hereinafter Nov 17. Tr.] at 23:3-4.  The two rifle magazines were removed from under the dining room table and placed in the shoebox, which was placed on the washing machine.  Oct 27. Tr. at 67:4-13.  *See also* Gov't Mot. Hrg. Ex. 8 (showing box on top of washing machine).

As soon as the two rifle magazines were discovered, the Marshals called MPD and asked them to come to the location.  *Id.* at 72:18-25.  In addition to the rifle magazines and the two handguns in the box, another shoebox containing two vials of suspected PCP was discovered in the back bedroom prior to MPD's arrival.  *Id.* at 73:1-9.

The officers did not take any photographs of the rifle magazines before they were placed in the shoebox containing the handguns.  There are no photographs of the shoebox containing the handguns documenting where it was found in the back bedroom.  There are no photographs of the vials of suspected PCP before they were removed from the shoeboxes and placed on the windowsill.  The photographs provided by the government and admitted as the government's motion hearing exhibits were taken by MPD, *id.* at 76:8-10, and depict the apartment after the eviction had been "stopped."  *Id.* at 76:11-13.  The eviction was stopped for about 45 minutes to an hour, and then restarted after two members of MPD took pictures and interviewed Mr. Taylor.  *Id.* at 79:18-23.

Once MPD arrived, they asked the Marshals whether they had searched the dining room closet.  *Id*. at 82:15-19.  The Marshals replied that they had not.  *Id.* at 82:20-21.  After the eviction resumed, MPD Officer Casey Logan opened a green bag located in the dining room closet and found an AR15 rifle and rifle magazines inside the bag.  *Id.* at 83:17-25; Tr. of Motion Hearing Before the Hon. Randolph D. Moss, United States District Judge (Dec. 8, 2017) [hereinafter Dec.

3

8 Tr.] at 34:6-7.  Officer Logan testified that once he "grabbed the bag, [I] could immediately feel that there was a rifle inside.  It's a small, thin bag, the ones that you would put a lawn chair in, the folding lawn chairs.  And it's real small so you can actually feel the configurations of whatever's in the bag."  *Id.* at 42:3-7.  When Officer Logan testified before the grand jury, he said that he searched inside the dining room closet and found "a bag, the type of bags that you would put the lawn chairs in if you were going to the beach."  *Id.* at 27:24-28:5.  When Officer Logan testified at Mr. Taylor's preliminary hearing, he described the same bag as a bag that one would put a "lawn chair" in if he was going to a "cookout."  *Id.* at 29:18-30:3.

The government did not preserve the green lawn chair bag.  The only photograph that the government took of the bag is Government's Motion Hearing Exhibit No. 11.  *See* Oct. 27 Tr. at 77:23-78:16.  As described by Deputy Beard, the bag is "right in the middle of the picture.  If you go diagonally across from the gold doorknob, it's that green bag there beside the white – what looks like a white trash bag."  *Id.*  The other belongings pictured in the photo were not otherwise photographed or preserved by the government.

Deputy Marshal Navas described the apartment as being "packed" with "an abundant amount of stuff inside."  Tr. of Motion Hearing Before the Hon. Randolph D. Moss, United States District Judge (Dec. 12, 2017) [hereinafter Dec. 12 Tr.] at 45:9-25.  The living room[2] was also packed, with "bags of clothes and whatnot in there and furniture."  *Id.*  However, no photos were taken of the living room as it appeared prior to when the eviction crew started moving items outside of the apartment.  Nor were any of the items found inside the apartment, including items found around or near the alleged contraband, preserved by the police.

---

[2] Testimony established that there is one large common room, which was referred to at times as a "living room" and other times as a "dining room."

4

## **Argument**

### I. The Government's Failure to Preserve Tangible Objects Recovered in the Apartment Violates Rule 16

Federal Rule of Criminal Procedure Rule 16(a)(1)(E) states:

> Upon a defendant's request, the government must permit the defendant to inspect and copy or photograph . . . *tangible objects* . . . if the item is within the government's possession, custody, or control and . . . (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

*See* Fed. R. Crim. Pro 16(a)(1)(E) (emphasis added). The items found inside the apartment are clearly discoverable under Rule 16 because the (1) the defense requested to see them; (2) the items were within the government's possession, custody or control; and (3) the items are material to preparing Mr. Taylor's defense. At the very least, the government should have properly photographed and preserved the items found around and near the alleged contraband, such as the green bag in which the rifle was allegedly found in. The government therefore violated Rule 16 when the government failed to recover and permit the defense to inspect these items.

Here, the items meet all three requirements of discoverable evidence under Rule 16. First, the defense properly requested discovery of all tangible objects fitting the criteria above, as early as July 17, 2017. *See* July 17, 2017 Letter, ECF No. 28-1 at 4. Given Deputy Beard's testimony that any items left in an apartment are discarded by the landlord following the eviction, the evidence in question was lost prior to the defense's request for that evidence. The D.C. Circuit has held that even before a "request for discovery is made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later." *United States v. Bryant*, 439 F.2d 642 (D.C. Cir. 1971), *abrogated*

5

*on other grounds as recognized in United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016).[3] *See also Allen v. United States*, 649 A.2d 548, 553 (D.C. 1994) ("The duty to produce discoverable evidence entails the antecedent duty to preserve that evidence," meaning that police officers were obliged to preserve the evidence notwithstanding the absence of a defense request for discovery at that specific time). "If the duty of preservation had been met during the investigation, the duty of disclosure could have been fulfilled by the prosecutor." *Robinson v. United States*, 825 A.2d 318, 327 (D.C. 2003)

The second Rule 16 requirement is met because during the course of the investigation, the evidence was clearly within the possession, custody, and control of the government. *See United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (taking broad view of this criterion and stating that the prosecution must disclose evidence "in the possession, custody, or control of any Executive Branch agency or department," regardless of the original source of the document or other object); *Robinson*, 825 A.2d at 327 (D.C. 2003) (government has a duty to preserve material evidence "the police knew or should have known about, and could have obtained if requested promptly from another government agency."). As the officers testified, the Marshals and later MPD had "control" over the apartment and all of the possessions inside it during the eviction and Mr. Taylor's arrest. After his arrest, Mr. Taylor was taken into custody and the landlord disposed of all items inside the apartment. Therefore, under Rule 16 the government had a duty to seize and preserve all of the items inside the apartment.

---

[3] In *Bryant*, the D.C. Circuit imposed a "heavy burden" on the government to show that it had established "rigorous and systematic procedures designed to preserve all discoverable evidence gathered in the course of a criminal investigation," or risk sanctions. 439 F.2d at 652. As the Circuit recognized in *Vega*, the Supreme Court's decision in *Arizona v. Youngblood* limited *Bryant's* holding with respect to claims under the Due Process clause. In *Arizona v. Youngblood*, the Court concluded that the government's failure to preserve "potentially useful evidence" does not violate Due Process under the Fifth Amendment "unless a criminal defendant can demonstrate the Government's bad faith." *Vega*, 826 F.3d at 533 (interpreting *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)).

At the *very least*, the government should have properly photographed and preserved the containers in which the alleged contraband was found—such as the shoeboxes and green lawn chair bag—in addition to the belongings and other items found around and near the alleged contraband.

And, the items described above are material to preparing Mr. Taylor's defense, so the third requirement under Rule 16 is met. Materiality "is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material "as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Id.* (quoting *United States v. Felt*, 491 F. Supp. 179, 186 (D.D.C. 1979)); *see also United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (the materiality hurdle "is not a high one"). In determining what to disclose under Rule 16, "the government cannot take a narrow reading of the term 'material' . . . [n]or may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may or what may be material to its preparation." *Safavian*, 233 F.R.D. at 15. Rather, "Rule 16 is intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *Id.* (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)).

Although the government must disclose Rule 16 evidence "only if such evidence enable[s] the defendant significantly to alter the quantum of proof in his favor," this is not a difficult standard to meet. *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996)) (internal quotation marks omitted). The D.C. Circuit explained that:

> [A] defendant in possession of such evidence may "alter the quantum of proof in his favor" in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.

7

*Id.*; *see also id.* at 67 (providing illustrative example of how "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths."). Clearly, the belongings in the apartment found near the alleged contraband, especially the green bag, are material to Mr. Taylor's defense.[4]

In addition, Metropolitan Police Department General Order No. 601.02 supports the discoverability of the evidence and further supports the Rule 16 violation. MPD General Order No. 601.02 states, "To ensure the integrity of any criminal investigation, ***all potentially discoverable material that comes into the possession of the [MPD] must be properly maintained and preserved***." (emphasis added). Metropolitan Police Department, General Order No. 601.2 (Feb. 3, 2014). This policy extends to "any such material, which may prove favorable to an accused." *Id.* In this case, the shoeboxes, green bag, and other items described above are tangible objects that were in the possession of MPD, but were not properly maintained and preserved. The evidentiary value of the evidence would have been immediately evident to the officers, but nevertheless, the officers failed to preserve the evidence, in violation of the general order, Rule 16, and the Constitution.

## II. The Government's Failure to Preserve Tangible Objects Recovered in the Apartment Violates Mr. Taylor's Right to Due Process Under the Fifth Amendment

In addition, the government's failure to preserve violated Mr. Taylor's constitutional rights under the Due Process Clause. In *Arizona v. Youngblood¸* the Supreme Court held that the

---

[4] Mr. Taylor maintains his innocence and takes the position that the green bag should have been provided to him in discovery under Fed. R. Crim. Pro 16(a)(1)(E)(i), as it is material to the preparation of his defense. However, in the event that the Court accepts as true the government's position: that the rifle *does belong* to Mr. Taylor, then it follows that the green bag belongs to Mr. Taylor and the green bag would be discoverable under Rule 16(a)(1)(E)(iii) as an item that "was obtained from or belongs to the defendant." Either way, the Court should conclude that the government violated Rule 16 by failing to preserve the green bag in which the rifle was allegedly found.

government's loss or destruction of "potentially useful evidence," in bad faith would constitute a Due Process violation. 488 U.S. at 58. Here, the failure to preserve *any* tangible evidence from the residence where the alleged contraband was recovered meets these requirements.

The Court in *Youngblood* defined "potentially useful evidence" as evidence of which "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57. Clearly that standard is met here. Had the green bag been preserved by law enforcement officials during the investigation, it could have been inspected to see whether there were any identifying marks that would connect it with someone other than Mr. Taylor. At the very least, the bag could have been sent for forensic testing.

The Court in *Youngblood* also elaborated on the bad faith requirement, stating that the "presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n. *. The officers in this case were aware that at least four adults were inside the apartment when the Marshals arrived, that the apartment was "cluttered" and "full of belongings." The exculpatory value of at least some of the items found in the apartment—such as the mail matter addressed to a person other than Mr. Taylor—was abundantly clear to the officers, and yet even that evidence was not preserved. Therefore, this standard was met. Indeed, in the civil context, courts have found that the "bad faith" standard can be met when evidence is concealed or destroyed "either deliberately or with reckless disregard for their relevance." *Battochi v. Wash. Hosp. Center*, 581 A.2d 759, 766 (D.C. 1990) (citing *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205-1206 (8th Cir. 1982), *cert. denied*, 461 U.S. 937 (1983)); *Rice v. United States*, 917 F. Supp. 17, 19 (D.D.C. 1996) (applying same standard). Even if the Court finds that the failure to preserve evidence in this case does not rise to the level of deliberate misconduct, at the very least, the failure

9

to preserve *any* tangible evidence found in the apartment constitutes a "reckless disregard for their relevance."

Not only did the MPD officers fail to take any steps to preserve this evidence, they violated their own policies in doing so. The policy of the MPD is to "preserve all material, which may constitute evidence, or may otherwise be pertinent in a subsequent criminal judicial proceeding." *See* Metropolitan Police Department, General Order No. 601.02 (Feb. 3, 2004). MPD General Order No. 304.8 (April 30, 1992) also instructs that "the identification and collection of evidence should be a team effort, and that no item of evidence should be overlooked." That the MPD officers violated their own General Orders in failing to preserve evidence is further evidence of bad faith—at the very least, of acting in "reckless disregard" for the "relevance" of this evidence.

In light of all of these circumstances, the decision by the officers to not collect the evidence establishes knowledge sufficient to support a finding of bad faith.[5] Accordingly, because both elements of the *Youngblood* standard are satisfied, the government's failure to preserve evidence in this case violated Mr. Taylor's Fifth Amendment right to due process and dismissal is warranted.

### III. The Appropriate Sanction for the Government's Failure to Preserve Critical Evidence is Dismissal

When the government has failed to preserve evidence, the trial court has discretion to impose a range of sanctions, including dismissal. Fed. R. Crim. P. 16(d)(2) (noting options available to the court to remedy a failure to comply, including "enter any other order that is just under the circumstances."); *Marshall*, 132 F.3d at 69 ("The district court has wide discretion in imposing a sanction if it finds that Rule 16 has been violated.") This is not a case in which one or

---

[5] If the Court finds insufficient evidence of government bad faith based on the factual proffer and arguments in this motion, Mr. Taylor requests an evidentiary hearing in which he would be afforded the opportunity to confront government witnesses on the circumstances surrounding the failure to preserve evidence.

10

two pieces of evidence was negligently overlooked by the police. This is a case where contraband was found in an apartment that appeared to be inhabited by multiple individuals, that was filled with clothing and other belongings, and the police failed to preserve a single piece of tangible evidence. Nor is this a case where the violation can be remedied by granting a continuance or preventing the government from introducing certain evidence. There is no sanction short of dismissal that will suffice in vindicating Mr. Taylor's discovery rights and preventing similar violations in the future.

Courts have dismissed cases where, as here, the government failed to meet its constitutional obligations to preserve evidence. *See, e.g.*, *United States v. Bohl*, 25 F.3d 904, 914 (10th Cir. 1994) (dismissing indictments where the government allowed steel transmission towers to be destroyed prior to trial and "the actual steel used in the towers was potentially useful for [the] defense because [the defendants'] own tests of the steel might have exonerated them"); *United States v. Cooper*, 983 F.2d 928, 930 (9th Cir. 1993) (affirming dismissal of the indictment where the government failed to preserve tangible evidence that the defense argued could have yielded exculpatory information if tested by its expert, who testified that he could "reach no firm conclusions without examining" the non-preserved evidence in question); *State v. Hannah*, 583 P.2d 888 (Ariz. 1978) (affirming dismissal of the indictment due to negligent failure to preserve where (1) "fingerprints could have been lifted off the [evidence]," (2) it was not clear "whether exculpatory evidence would have been developed," and (3) "tests were not made which could have been made").

Moreover, there is no reasonable explanation why the police did not preserve *any* tangible evidence. The green bag, mail matter, and other belongings are relatively small, non-hazardous, non-perishable items. These items are not equivalent to a car or another expensive piece of

11

property in which there was an interest in returning the item to the owner as soon as possible. Nor is there a significant cost or downside to the government in preserving the evidence. To the contrary, the items in the apartment could easily have been preserved without incurring significant costs or inconveniencing any third parties. Nothing prevented the police officers from preserving these pieces of evidence, and yet they failed to take any steps at all in order to do so. Given these circumstances, the government's failure to preserve any tangible evidence is particularly egregious.

## Conclusion

For the reasons contained herein and any others that may appear to the Court, Mr. Taylor respectfully requests that the Court grant this Motion and that the Retyped Indictment be dismissed, or in the alternative, lesser sanctions be imposed. Mr. Taylor requests to be heard on this Motion at an evidentiary hearing before the Court.

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

LOUI ITOH
MARY MANNING PETRAS
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500