UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 17-CR-129 (RDM)** |
| | : | |
| v. | : | |
| | : | |
| **MARIO A. TAYLOR,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S RESPONSE TO THE COURT'S INQUIRY[1]

The United States of America, by and through its attorney, Jessie K. Liu, the United States Attorney for the District of Columbia, hereby files this response to the Court's inquiry regarding United States v. Dorman, 860 F.3rd 675 (D.C. Cir. 2017), with respect to the government's expectant evidence in the upcoming trial of the defendant.

## ANALYSIS

In Dorman, the defendant kept a bedroom in the basement of his mother's multi-level house. Id. at 679. Dorman was tied to the basement bedroom by, inter alia, painting of himself playing football and other personal items, including judicial court papers in Dorman's name. Id. at 678. Dorman's mother also referred to the bedroom as Dorman's "home base," although she testified that Dorman "stayed in many places." Id. at 678-679. The police suspected Dorman of robbing a jewelry store in Maryland, and executed a search warrant on his mother's house to look for evidence of the robbery. Id. at 678. Instead of robbery proceeds, the police found a loaded handgun between the box springs and the mattress of the bed in Dorman's basement bedroom, and a 15.2-ounce Tropicana bottle of PCP secreted next to the washer/ dryer in a common laundry room, also in the basement. Id.

---

[1] In addition, the government is attaching to this filing a copy of a revised proposed verdict form for consideration at the upcoming pre-trial conference scheduled for June 6, 2018.

Our Circuit Court held that the government's evidence was sufficient for constructive possession of the handgun, but insufficient to prove constructive possession of the PCP in the laundry room. Id. at 684. The government avers that the Circuit Court's rationale in Dorman regarding the PCP can be summarized and distinguished for the instant case as follows: (1) Dorman was not the owner or leaseholder of the residence; (2) many other people had access to the whole house, including the common area of the basement where the PCP was found; (3) neither the PCP nor any of the contraband in the house was in plain view; and (4) Dorman was not present at the time the police recovered the PCP.

## THE INSTANT CASE IS DISTINGUISHABLE FROM DORMAN

As previously outlined to this Court at the motions hearing and in other testimony and the expectant testimony at trial, the government would respectfully proffer the following:

1) **Primary leaseholder**: In the instant case, the fact that defendant Taylor was the singular primary leaseholder for the residence is a major point of distinction from Dorman. The Circuit Court's rationale stressed that Dorman was "neither the lessee nor owner of [the residence], and there was no evidence of mail addressed to him at that address; paperwork from his arrest in Pennsylvania in the basement bedroom listed [another D.C. address] as his address." Id. at 680. Importantly, other Courts have held that "[t]he natural inference is that those who live in a house know what is going on inside, particularly in the common areas." United States v. Jenkins, 928 F.2d 1175, 1179 (D.C. Cir. 1991). See also, e.g., United States v. Morris, 977 F.2d 617, 620 (D.C. Cir. 1992) ("a jury is entitled to infer that a person exercises constructive possession over items found in his home"); United States v. Long, 905 F.2d 1572, 1577-78 (D.C. Cir. 1990) (a person who exercises dominion and control over given premises constructively possesses contraband found on those premises).

2) **Two ammunition loaded magazines found in plain view**: Two AR-15 magazines found in plain view under the kitchen table in the common area of the apartment will provide powerful evidence that defendant Taylor, as the leaseholder and primary occupant of the apartment, exercised dominion and control over both of the magazines in plain view under the kitchen table and the AR-15 rifle and two more additional ammunition loaded magazines found in the common closet in the apartment. This evidence is important because all the ammunition and magazines fit the weapon found in the closet. By contrast, the Circuit Court's rationale in Dorman stressed that none of the contraband in that case was found in plain view. Id. at 681.

Therefore, the absence of any contraband in plain view was a factor where the Circuit Court distinguished that case from United States v. Jenkins, 928 F.2d 1175 (D.C. Cir. 2008) (In Jenkins, the Circuit Court found sufficient evidence of constructive possession of drug evidence in a common area of a shared home – where the drug evidence was in plain view – based in part on possession of ammunition in the defendant's private bedroom and the "gun and drug" link.) In fact, the Circuit Court held that, "[t]here is no evidence that PCP or PCP drug paraphernalia were in plain view in the common areas of Dorman's mother's home." Dorman, 860 F.3d at 681. While in this case the government does not have the "gun/ drug" link here; however, the link between the two magazines in plain view and the AR-15 and two additional loaded magazines found in the common closet itself is even more direct than the indirect gun/ drug link outlined in Jenkins.

3) **Presence at the residence at the time of the seizure:** The instant case is also distinct from Dorman because defendant Taylor was present at the apartment at the time law enforcement officers recovered the contraband. By contrast, the Circuit Court noted; "Nor was Dorman physically present or behaving suspiciously during the search of his mother's home. That

absence "magnifies the importance of these evidentiary holes in the government's case." Id at 681 (quoting United States v. Lawrence, 471 F.3d 135, 142 (D.C. Cir. 2006)).

4) **Access to the home:** The expectant testimony at trial will prove that defendant Taylor and one other person, who lived in a room in the apartment, were lawful residents. In Dorman, there were three people (including Dorman) who lived in the house, and multiple other people who had keys and/or regular access and "[v]arious other individuals also frequented" the location as well. Id. at 679. In addition, a family friend of Dorman's mother, who also lived in the location, testified that he let other individuals into the home at Dorman's request when "no one else was there." Id. at 679. Moreover, in Dorman the Circuit Court found that there were "[t]oo many other individuals had access to the home whose activities were not specifically described." Id. at 683.

In sum, the government respectfully avers that the Circuit Court's rationale in Dorman hewed to the traditional constructive possession concepts of dominion and control. "The government must prove beyond a reasonable doubt that '"the defendant knew of, and was in a position to exercise dominion and control over, the contraband."'(quoting United States v. Littlejohn, 489 F.3d 1335, 1338 (D.C. Cir. 2007). Id. at 679.

Wherefore, the government files this response to the Court's inquiry regarding <u>United States v. Dorman</u>, 860 F.3rd 675 (D.C. Cir. 2017), with respect to the expectant evidence in the upcoming trial of the defendant.

                                            Respectfully submitted,

                                            JESSIE K. LIU
                                            UNITED STATES ATTORNEY

By:                /s/
                                            EMORY V. COLE
                                            PA #49136
                                            Assistant U.S. Attorney
                                            PA Bar No. 49136
                                            (202) 252-7692
                                            Violent Crimes & Narcotics Trafficking
                                            555 4th Street, N.W., 4th Floor
                                            Washington, D.C. 20530